UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| SCOTT L. RENDELMAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | No. 2:23-cv-00277-JMS-MG |
| ) | |
| T. RULE, Warden, ) | |
| ) | |
| Respondent. ) | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Petitioner Scott L. Rendelman, a federal inmate at FCI Terre Haute, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging a prison disciplinary proceeding identified as Incident Report No. 3700663. For the reasons explained in this Order, Mr. Rendelman's habeas petition is **DENIED,** and final judgment will enter against him.

**I.
LEGAL BACKGROUND**

Federal inmates seeking to challenge the loss of good time credits in prison disciplinary proceedings on due process grounds may petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *Jones v. Cross*, 637 F.3d 841, 845 (7th Cir. 2011). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974); *Jones,* 637 F.3d at 845 (same for federal inmates).

1

## II.
### FACTUAL BACKGROUND

On December 7, 2022, Lieutenant D. Miles wrote an Incident Report charging Mr. Rendelman with committing Prohibited Act Codes 203 Threatening Bodily Harm; 206 Making Sexual Proposal/Threat; and 312 Being Insolent to Staff Member. [Filing No. 10-1 at 44.] The Incident Report states:

> On November 21, 2022; Inmate RENDELMAN, Scott. Reg. No. 24628-037, placed three letters he authored in the Institutions outgoing mail. Th[ese] letters were addressed to Marion USP Staff.[1] Specifically, the Warden, Captain, and the case manager. Throughout the bodies of these letters, inmate Rendelman threatens staff and their children with physical violence intertwined with sexually explicit content and threats.

[Filing No. 10-1 at 44; *see also* Filing No. 10-1 at 33-38 (copies of the full letters).] The Incident Report goes on to include excerpts from the letters. [Filing No. 10-1 at 44.] The Court has reviewed the Incident Report in its entirety, along with the copies of the full letters, and will not reproduce either in this Order due to their disturbing nature but notes that they are extremely sexually explicit and violent in nature.

The Bureau of Prisons initially referred Mr. Rendelman's case to the Criminal Division of the United States Attorney's Office for the Southern District of Indiana ("USAO") as a potential criminal matter, and the Incident Report was suspended for review pending the USAO's decision on criminal prosecution. [Filing No. 10-1 at 42.] The USAO declined prosecution on December 7, 2022, [Filing No. 10-1 at 42], and that same day, Mr. Rendelman received a copy of the Incident Report, [Filing No. 10-1 at 44-47]. Lieutenant Miles investigated and concluded that there was

---

[1] Mr. Rendelman previously resided at USP Marion. [Filing No. 10-1 at 25.] On November 10, 2022, he was transferred to FCI Terre Haute, and remains there to date. [Filing No. 10-1 at 25.]

enough evidence for further disciplinary action and the charges were forwarded to the Unit Disciplinary Committee ("UDC") for a hearing. [Filing No. 10-1 at 54.]

Mr. Rendelman told the UDC that "[d]elivery was way past the 24 hours" and "I'm supposed to be on a special management plan [("SMP")] for this so I don't get incident reports for it. If I was taken off of it, no one told me." [Filing No. 10-1 at 53.] The UDC referred the charge to a Disciplinary Hearing Officer ("DHO") for further hearing. [Filing No. 10-1 at 53.] Mr. Rendelman was advised of his rights but refused to sign the Notice of Disciplinary Hearing form. [Filing No. 10-1 at 48-50.] He nevertheless checked the "do not wish to have witnesses" box, yet listed three individuals from USP Marion as witnesses to testify about the SPM. [Filing No. 10-1 at 50 (listing the names "Sproul, Siereveld, [2] and Keller").]

On January 5, 2023, the DHO conducted its hearing. [Filing No. 10-1 at 56.] Mr. Rendelman admitted to sending the letters and stated: "I am supposed to be on a special management plan so I don't receive incident reports for this. I was put on the plan in 2017 by Acting Warden Sproul at FCI Terre Haute. This plan followed me to Marion and was supposed to follow me back to Terre Haute." [Filing No. 10-1 at 56.] The DHO heard statements from the witnesses that Mr. Rendelman requested:

- From Warden D. Sproul, USP Marion: "[Mr.] Rendelman and I had an agreement that he could send me mail like this, but the agreement was that he could only send it to me, and to hand it to me directly or to have a staff member hand it to me directly. He was not allowed to send it through the Postal Service. The agreement did not include any other staff member except for myself."

- From E. Keller, FCI Greenville: "[Mr.] Rendelman had an agreement with Warden Sproul that he had to provide the letter to the Intelligence Specialist in the CMU and tell them it was for the Warden. Letters like this were not to be mailed out."

---

[2] The parties' filings refer to this individual as both "Siereveld" and "Sierveld." For the sake of consistency, the Court uses the spelling "Siereveld" throughout this Order.

- K. Siereveld: "[Mr.] Rendelman and Sproul had an agreement that only involved the two of them."

[Filing No. 10-1 at 57.] In addition to Mr. Rendelman's statement and the statements of the requested witnesses, the DHO considered the Incident Report, Lieutenant Miles' investigation, and the letters and their accompanying mailing envelopes that were individually addressed to Nate Simpkins, Captain Morehead, and Warden Dan Sproul, all at the address "PO Box 2000, Marion, IL 62959." [Filing No. 10-1 at 57-59.]

Based on the greater weight of the evidence, the DHO found that Mr. Rendelman had committed Prohibited Act Codes 203 Threatening Bodily Harm and 206 Making a Sexual Proposal or Threat. [Filing No. 10-1 at 58.] The sanctions imposed included a 27-day loss of earned credit-time per Prohibited Act Code violation, a 180-day loss of email and commissary privileges, a 27-day forfeiture of non-vested credit-time, and 15 days of disciplinary segregation. [Filing No. 10-1 at 59.] Mr. Rendelman filed both a Regional Administrative Remedy Appeal and a Central Office Administrative Remedy Appeal, both of which were denied. [Filing No. 1-1 at 12-16.] Mr. Rendelman subsequently brought this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, asserting two arguments: (1) that his conduct was privileged due to the SMP he had with Warden Sproul; and (2) that Lieutenant Miles did not deliver a copy of the Incident Report to him on December 7, 2022 as the Incident Report stated and did not interview him. [Filing No. 1-1 at 6-10.]

### III.
#### ANALYSIS

A. **Mr. Rendelman's Conduct and the SMP**

Mr. Rendelman argues that his SMP was in effect since 2017 when he was first residing at FCI Terre Haute and Warden Sproul was its Acting Warden. [Filing No. 1 at 7.] He asserts that

he "was not given any SMP paperwork regarding the placement but rather was told orally of the placement by . . . Warden [Sproul] himself and by [Ms.] Siereveld, the institution attorney," that "[u]nder the terms of the plan, [he] would turn in his threatening letters . . . to the Intelligence Research Specialist at regular mailcall, who would then forward them directly to the Warden," and that he "would not receive any Incident Reports for such letters." [Filing No. 1 at 7-8.] He contends that "[t]he letters would be in envelopes addressed to outside parties just like regular mail but would not have a postage stamp." [Filing No. 1 at 8.] He argues that the SMP followed him to USP Marion when he was transferred there in 2019 and submits two disciplinary hearing reports from his time at USP Marion where the SMP was mentioned as the ground for expungement of incident reports regarding threatening letters. [Filing No. 1 at 8; Filing No. 1-1 at 12-15.]

The Respondent notes that Mr. Rendelman "did not refute any part of the [I]ncident [R]eport and admitted he authored the three explicit and threatening letters." [Filing No. 10 at 7.] The Respondent argues that "[t]here is ample evidence in the DHO's record to support the finding of guilt" and that "the crux of [Mr.] Rendelman's challenge to the DHO's finding is simply incorrect." [Filing No. 10 at 7.] It asserts that Mr. Rendelman's argument regarding the SMP and his ability to send threatening letters without receiving incident reports "is belied by the evidence in the record." [Filing No. 10 at 7.] The Respondent highlights that "[a]ll three of the officials from USP – Marion interviewed by the DHO made clear that [Mr.] Rendelman was allowed only to give such letters directly to Warden [Sproul] through an intelligence specialist in the CMP" and that Warden Sproul specifically explained that Mr. Rendelman "was not allowed to send [the letters] through the Postal Service" under the SMP. [Filing No. 10 at 7.]

Mr. Rendelman did not file a reply.

5

"Prisoners have a right to be free from arbitrary actions by prison officials," including false disciplinary actions. *Burton v. Davis*, 41 F. App'x 841, 845 (7th Cir. 2002). However, "the protection from such actions is found in the procedures mandated by due process." *Id.* If the procedural due process requirements of *Wolff* are satisfied, a reviewing court's role "is limited to determining whether there was sufficient evidence to support the [hearing officer]'s decision." *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir. 1987) (citing *Hanrahan v. Lane*, 747 F.2d 1137, 1141 (7th Cir. 1984)). "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274; *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

Mr. Rendelman's disciplinary conviction for Prohibited Act Codes 203 Threatening Bodily Harm and 206 Making a Sexual Proposal or Threat is supported by sufficient evidence and was not arbitrary. The evidence shows that Mr. Rendelman indeed had an informal SMP only with Warden Sproul that began while Warden Sproul was employed as the Acting Warden at FCI Terre Haute and that continued at USP Marion after Mr. Rendelman was transferred and Warden Sproul became USP Marion's Warden. [Filing No. 10-1 at 57.] The SMP allowed Mr. Rendelman to either hand or send threatening letters "directly" to Warden Sproul or to provide "the letter to the Intelligence Specialist in the CMU and tell them it was for [Warden Sproul]." [Filing No. 10-1 at 57.] The evidence also shows that Mr. Rendelman "was not allowed to send [threatening letters

6

under the SMP] through the Postal Service." [Filing No. 10-1 at 57.] Yet that is what the evidence shows Mr. Rendelman did—he "placed three letters he authored in [FCI Terre Haute's] outgoing mail" and Mr. Rendelman does not contest this evidence. [Filing No. 10-1 at 44; *see also* Filing No. 10-1 at 33-39.] Accordingly, the above evidence amounts to "some evidence" that Mr. Rendelman did not follow the terms of his SMP with Warden Sproul, so his conduct is not privileged, and his conviction is not arbitrary.

In any event, the evidence shows that the SMP was only between Mr. Rendelman and Warden Sproul, who remains the Warden at USP Marion. Significantly, Mr. Rendelman does not submit evidence showing that his informal SMP with Warden Sproul followed him back to FCI Terre Haute—a facility where Warden Sproul no longer works. Lastly, Mr. Rendelman's explanation that "[t]he letters [under the SMP] would be in envelopes addressed to outside parties just like regular mail but would not have a postage stamp," does not change the fact that he still placed the letters in the outgoing mail in contravention of how he and the witnesses described the terms of the SMP.

Mr. Rendelman is not entitled to relief on this argument.

**B.    Incident Report and Lieutenant Miles' Investigation**

Mr. Rendelman argues that Lieutenant Miles "did not deliver a copy of the Incident Report to [him] on December 7, 2022 at 10[:]12 hours, as indicated in the record." [Filing No. 1 at 7.] He asserts that the Incident Report was actually delivered twenty hours later and by another officer, which is "more than the 24 hour time limit that policy requires for the delivery of the report by the investigating lieutenant." [Filing No. 1 at 7-10 (emphasis omitted).] Mr. Rendelman also argues that Lieutenant Miles never interviewed him and that he "never had the opportunity to tell

7

[Lieutenant Miles] about the SMP, and so [Lieutenant Miles] never investigated [it]." [Filing No. 1 at 10.]

The Respondent argues that "the due process requirement for prison disciplinary proceedings requires the issuance of at least 24 hours advance written notice of the charge," and that Mr. Rendelman received such notice. [Filing No. 10 at 5-6 (quotations and citations omitted).] The Respondent contends that despite Mr. Rendelman's assertion, the evidence shows that Mr. Rendelman was provided the Incident Report on December 7, 2023, but even if he received it the following morning, "it is of no consequence," because his DHO hearing occurred on January 5, 2023, "nearly a month later." [Filing No. 10 at 6.] Regarding Mr. Rendelman's SMP, the Respondent argues that Lieutenant Miles did investigate Mr. Rendelman's assertions regarding the SMP and that all of the witnesses that Mr. Rendelman requested were interviewed by the DHO. [Filing No. 10 at 5-6.]

Mr. Rendelman did not file a reply.

Mr. Rendelman's arguments are without merit. Due process only entitles Mr. Rendelman to 24 hours' notice of the charges against him before a hearing. *Wolff*, 418 U.S. at 564 (due process requires a minimum of 24 hours advance written notice of the charge); *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003). Due process does not entitle Mr. Rendelman to a 24-hour turnaround between when the Incident Report was written and when he received noticed of it. *See, e.g.*, *Wolff*, 418 U.S. at 564; *Hill*, 472 U.S. at 454; *Jones*, 637 F.3d at 845.

Additionally, Mr. Rendelman mentions "policy," but he does not provide evidence of the specific policy he contends supports his argument, and in any event, prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, claims based on

violations of prison policy are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review.").

Further, his argument that Lieutenant Miles never investigated or interviewed him is unpersuasive. The evidence shows that Lieutenant Miles conducted an initial investigation, advised Mr. Rendelman of his rights, including the right to remain silent, and "asked if he wished to make a statement regarding this investigation, [and] he replied No." [Filing No. 10-1 at 46.] Mr. Rendelman cannot now argue that Lieutanent Miles should have interviewed him in violation of his exercised right to remain silent. The evidence also shows that Mr. Rendelman told the UDC about the SMP and that Mr. Rendelman's SMP was investigated—the witnesses that Mr. Rendelman requested to testify regarding the SMP were all contacted and provided statements. [Filing No. 10-1 at 56-60.] Lastly, Mr. Rendelman made a statement to the DHO at his hearing regarding the SMP. [Filing No. 10-1 at 58-59.] Therefore, to the extent that Mr. Rendelman's argument is about his right to present evidence in his defense, he was not denied this right.

Mr. Rendelman is not entitled to habeas relief on this ground.

### IV.
#### CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in Mr. Rendelman's case, and there was no

9

constitutional infirmity in the proceeding that entitles him to the relief he seeks. Accordingly, Mr. Rendelman's Petition for a Writ of Habeas Corpus, [1], is **DENIED**, and the action is dismissed.

Final judgment shall issue by separate order.

Date: 11/5/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF to all counsel of record**

**Distribution via U.S. Mail to:**

Scott L. Rendelman
24628-037
TERRE HAUTE – FCI
TERRE HAUTE FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808